UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LUIS CERVANTEZ,                                                                              **Plaintiff**

v.                                                                              Case No. 3:15-cv-617-CHL

COMMISSIONER OF SOCIAL SECURITY,                                                **Defendant**

<u>Memorandum Opinion and Order</u>

### Introduction

Luis Cervantez challenges the Commissioner's denial of claims for disability insurance benefits and supplemental security income benefits. (DN 1 at ¶ 4.)

For the reasons below, the Court will **remand** this matter to the Commissioner.

### Background

As a preliminary matter, the Court notes that the Administrative Record is full of conflicting references to Cervantez's gender. The underlying records from the Social Security Administration's field office consistently identify Cervantez as "Female."[1] Letters from the Social Security Administration to Cervantez address Cervantez as "Ms. Cervantez."[2] On the other hand, Cervantez's attorney consistently refers to him as "Mr. Cervantez."[3] The Administrative Law Judge ("ALJ") described Cervantez as a "man," but that decision also includes female pronouns.[4] The Court will refer to Cervantez by name only.

For clarity, the Court cites to the document number and Page ID#.

---

[1] DN 10-3 at 143, 153, 155, 160, 169, & 186; DN 10-6 at 269, 305, & 342.
[2] DN 10-2 at 38, & 52.
[3] DN 10-2 at 45 & 47; DN 10-6 at 357, 360, & 365; DN 13.
[4] *Compare*, DN 10-2 at 68 ("The claimant presents as a 51-year-old man who alleges pain in his lower back, hypertension, depression, and low IQ.") *with* DN 10-2 at 63 – 64 ("If the claimant is not able to do other work and meets the duration requirement, she is disabled.").

1

On September 28, 2011, Janice Downs, Cervantez's representative, applied for disability insurance and supplemental security income benefits on Cervantez's behalf. (DN 10-2 at 62; DN 10-3 at 143.) Initially, Cervantez alleged disability beginning on May 15, 2011. (DN 10-2 at 62.) Later, Cervantez amended the claims to allege disability beginning on June 1, 2012. (*Id.*)

On initial review of both claims, the Commissioner determined that Cervantez had two severe impairments: a "primary" diagnosis of Osteoarthrosis and Allied Disorders and a "secondary" diagnosis of Affective Disorders. (DN 10-3 at 148, 160.) Ann Demaree, Ph.D., conducted a psychiatric review of Cervantez's mental impairment. (*Id.* at 148 – 49, 160 – 61.) Demaree determined that Cervantez was mildly restricted in the activities of daily living; has mild difficulty in maintaining social functioning; and has moderate difficulty in maintaining concentration, persistence, or pace. (*Id.* at 148, 160.) The Commissioner denied both claims, finding that Cervantez was not disabled. (*Id.* at 154, 166.)

On reconsideration of both claims, the Commissioner determined that Cervantez had three severe impairments: a "primary" diagnosis of Osteoarthrosis and Allied Disorders; a "secondary" diagnosis of Affective Disorders; and an additional diagnosis of Borderline Intellectual Functioning. (*Id.* at 176, 193). Jane Cormier, Ph.D., conducted a psychiatric review of Cervantez's mental impairment. (*Id.* at 176 – 77, 193 – 94.) Cormier determined that Cervantez was mildly restricted in the activities of daily living; has moderate difficulty in maintaining social functioning; and has moderate difficulty in maintaining concentration, persistence, or pace. (*Id.* at 177, 194.) The Commissioner denied reconsideration of Cervantez's claims, again finding that Cervantez was not disabled. (*Id.* at 185, 202.)

2

Cervantez appeared for a hearing, represented by counsel. (DN 10-2 at 62.) Cervantez testified. (*Id.* at 81 – 104.) Vocational expert Sharon Lane also testified. (*Id.* at 104 – 12.) The ALJ ruled that Cervantez was not disabled. (*Id.* at 72.)

First, the ALJ found that Cervantez met the insured status requirements of the Social Security Act through September 30, 2016. (*Id.* at 64.) Second, the ALJ found that Cervantez has not engaged in substantial gainful activity since May 15, 2011. (*Id.*) Third, the ALJ found that Cervantez "has the following severe impairments: degenerative disc disease, hypertension, depression, and borderline intellectual functioning." (*Id.*) Additionally, the ALJ discussed Cervantez's other impairments which include gout and osteoarthritis of the knee and hip. (*Id.*)

Fourth, the ALJ found that Cervantez does not have an impairment or combination of impairments that meets or equals a listed impairment. (*Id.* at 65.) Fifth, the ALJ concluded that Cervantez has the residual functional capacity to perform light work. (*Id.* at 67.) Sixth, the ALJ concluded that Cervantez is capable of performing his past relevant work. (*Id.* at 70.) Seventh, the ALJ concluded that Cervantez was not disabled. (*Id.* at 72.)

The Appeals Council denied Cervantez's request for review. (DN 10-2 at 38.) Now, Cervantez's claims are fully briefed and ripe for review. (*See* DNs 13 & 16.)

## Standard of Review

The Commissioner's factual findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The Court should affirm the Commissioner's conclusion unless the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial record evidence. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

(internal quotation marks omitted). The Court does not resolve conflicting evidence or examine the claimant's credibility. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

"The failure to comply with the agency's rules warrants a remand unless it is harmless error." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). An ALJ's "failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* at 729. Thus, "[e]ven if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (brackets added).

## Discussion

The Commissioner evaluates whether a claimant is disabled through a sequential five-step process. 20 C.F.R. § 404.1520(a)(1); *Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). Steps three, four, and five are at issue in this case.

At step three, the ALJ considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has an impairment that meets or equals one of the listed impairments, the claimant is disabled. *Id.* The listed impairments "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 530 (internal quotation marks omitted).

4

The Commissioner applies a "special technique" in evaluating a mental impairment. 20 C.F.R. § 404.1520a(a). The special technique involves evaluating a claimant's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* § 404.1520a(c)(3). The Commissioner rates these abilities on a scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). A rating of extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* In addition to medical evidence that meets the medical criteria, a claimant must show an extreme limitation of one of the abilities or two marked limitations. 20 C.F.R. Pt. 404 Subpt. P. App. 1 Part A2 § 12.00(A)(2)(a) & (b). Or, in addition to medical evidence that meets the medical criteria, a claimant must show that the mental disorder has lasted at least two years. *Id.* § 12.00(A)(2)(a) & (c).

For an intellectual disorder, a claimant must show "significantly subaverage general intellectual functioning; significant defects in current adaptive functioning; and evidence that demonstrates or supports (is consistent with) the conclusion that your disorder began prior to age 22." *Id.* § 12.00(A)(2)(c)(3).

> Listing 12.05 has two paragraphs, designated A and B, that apply to only intellectual disorder. Each paragraph requires that you have significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and evidence that demonstrates or supports (is consistent with) the conclusion that your disorder began prior to age 22.

*Id.* § 12.00A(3).

In *Gentry*, the court of appeals remanded for a finding of disability when an ALJ's determination of whether the plaintiff's impairments met or equaled listed impairment lacked specific analysis, among other reasons. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) ("The ALJ concluded under step three, without any analysis specific to the severity of Gentry's psoriasis or psoriatic arthritis, that none of Gentry's medical impairments met the

5

severity of the listed impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1."); *see also*, *Siegel v. Colvin*, 2014 WL 4388151 *4 (N.D. Oh. 2014) ("However, the ALJ did not provide any analysis of Plaintiff's physical impairments at step three, and failure to do so was reversible error."); *cf. Bentley v. Colvin*, 2016 WL 4578335 *2 (E.D. Ky. 2016) ("This case should be remanded for the ALJ and the parties to consider whether Plaintiff's liver disease meets a Listing under 5.05.").

At step three, if the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment does not meet or equal a listed impairment, the analysis proceeds to step four. *Id.* § 404.1520(a)(4).

At step four, the ALJ considers the claimant's residual functional capacity and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity is the claimant's "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted).

At step five, the ALJ assesses the claimant's residual functional capacity along with age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who cannot make an adjustment to other work is disabled. *Id.* § 404.1520(g)(1).

**Analysis**

Cervantez objects to findings four, five, six, and seven by the ALJ. (DN 13 at 618 – 31.) As discussed below, his objection to finding four is well-taken and requires remand. The Court will not address his remaining objections.

Cervantez objects to the ALJ's fourth finding. (DN 13 at 618 – 23.) That finding says:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.945 and 416.926).

6

(DN 10-2 at 65.)

## I. Whether substantial evidence supports the ALJ's conclusion that Cervantez's physical impairment did not meet or equal a listed impairment

For Cervantez's physical impairment, the ALJ found:

> In making this finding, the undersigned has given particular consideration to Section 1.00 *et seq.*, Musculoskeletal System. Despite the claimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. In addition, no State agency reviewer, consultant, or examiner has concluded that the claimant has an impairment(s) severe enough to meet or equal a listing; and no subsequent evidence has been submitted that would alter the previous conclusions that the claimant has no impairments severe enough to meet or equal a listing.

(DN 10-2 at 65.)

Cervantez argues that the "ALJ's evaluation of whether Cervantez met or equaled a listing is not supported by substantial evidence because he failed to provide a narrative explanation that a reviewer could follow in order to understand the basis for the decision." (DN 13 at 618.) Instead, the ALJ "merely regurgitated the wording of regulations that were applicable, applied a standard that was not in Social Security law and failed to resolve conflicts between his conclusions and contrary facts in the record." (*Id.*)

Cervantez does not identify the physical impairment or combination of impairments that would meet or equal the severity of a listed impairment. (*Id.* at 618 – 23.) Instead, he spends the bulk of this section arguing that the ALJ erred in concluding that Cervantez only has mild limitations in his activities of daily living. (*See, e.g.*, *id.* at 619.) Cervantez does not cite a regulation or case that would require an ALJ to provide a narrative explanation for whether a claimant's impairment met or equaled a listed impairment. Nor does he identify the erroneous standard the ALJ applied.

7

The Commissioner responds that substantial evidence supports the ALJ's finding that Cervantez's physical impairment did not meet or equal the severity of a listed impairment. (DN 16 at 639 – 49.) The Commissioner argues that the record supports the Administrative Law Judge's determination that Cervantez did not satisfy the requirements of Section 1.00 (Musculoskeletal System). (*Id.* at 639.) Specifically, Cervantez failed to show that he met or equaled Listing 1.04[5] for spine disorders. (*Id.* at 639 – 40.) The Commissioner says,

> First, Amanda Lange, M.D., a medical consultant who is an expert in disability evaluation, considered the July 2011 MRI, yet ultimately concluded that Plaintiff's impairments did not meet or medically equal a listing. (Tr. 28, 130, 142 – 43) Second, no treating or examining source opined that Plaintiff's impairments met or equaled Listing 1.04. (Tr. 28) Finally, Plaintiff's MRI does not show that his impairment met all of the requirements of Listing 1.04.

(*Id.* at 640.)

The administrative record provides little support for these assertions.

As to the Commissioner's first assertion, Lange did not conclude that Cervantez's physical impairment did not meet or equal a listing. (DN 10-3 at 178 – 81, 195 – 98.) Lange made no conclusion at all for whether Cervantez's physical impairment met or equaled any listed

---

[5] Listing 1.04 says:
Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
    A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
    B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
    C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively… .
20 C.F.R. Pt. 404 Subpt. P, App. 1 Part A1 § 1.04.

8

physical impairment. (*Id.*) Rather, Lange only assessed Cervantez's physical residual functional capacity. (*Id.*)

The Court considered the possibility that the Commissioner made a simple mistake in its brief as to the consultant's name who evaluated whether Cervantez's physical impairment met or equaled a listed impairment. Even the best advocates occasionally make errors in their briefs. In looking at that possibility, a much larger omission became apparent.

On initial review, the Commissioner determined that Cervantez had two severe impairments: Osteoarthrosis and Allied Disorders and Affective Disorders. (*Id.* at 148 – 49, 160 – 61.) The Commissioner listed Cervantez's physical impairment under the Osteoarthrosis and Allied Disorders as the "primary" impairment. (*Id.* at 148, 160.) Ann Demaree, Ph.D., assessed Cervantez's mental impairment under the listings for Organic Mental Disorders and Affective Disorders. (*Id.* at 148, 160 – 61.) Demaree evaluated Cervantez's mental residual functional capacity. (*Id.* at 152 – 53, 164 – 65.)

On reconsideration, the Commissioner determined that Cervantez had an additional severe impairment: Borderline Intellectual Functioning. (*Id.* at 176, 193.) Again, the Commissioner listed Cervantez's impairment under the Osteoarthrosis and Allied Disorders as the "primary" impairment. (*Id.*) Jane Cormier, Ph.D., assessed Cervantez's mental impairment under the listings for Organic Mental Disorders and Affective Disorders. (*Id.* at 176 – 77, 193 – 94.) It does not appear that Cormier assessed Cervantez's intellectual impairment under the Intellectual Disorders Listing. (*See id.*) Cormier also evaluated Cervantez's mental residual functional capacity. (*Id.* at 181 – 83, 198 – 200.)

Together, Demaree and Cormier provided opinions on whether Cervantez's mental impairment met or equaled a listed impairment. They also assessed Cervantez's mental residual

9

functional capacity. Missing from these assessments is any analysis of whether Cervantez's "primary" impairment—degenerative disc disease—met or equaled the spine disorders listing or a similar listing.

For the Commissioner's second assertion, it is true that no treating or examining source opined that Plaintiff's physical impairment met or equaled Listing 1.04. But it's more than that: the administrative record lacks any evidence that a treating or examining source even considered whether Cervantez's degenerative disc disease met or equaled a listed impairment. Altogether, the administrative record is devoid of any analysis on whether Cervantez's degenerative disc disease met or equaled a listed impairment.

The ALJ said that "the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (DN 10-2 at 65.) Apart from the vague reference to Section 1.00, the ALJ did not cite to a specific listing for Cervantez's physical impairment, nor did the Administrative Law Judge provide an analysis specific to Cervantez's degenerative disc disease. *See Gentry,* 741 F.3d at 723. Instead, the ALJ's discussion of whether Cervantez's physical impairment met or equaled a listing amounted to vague generalities without any support in the administrative record. These unsupported, vague generalities fall short of what a reasonable mind might "accept as adequate to support a conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).

For the Commissioner's third assertion, the Court will not opine as to whether Cervantez's MRI, or any other medical evidence Cervantez may have, shows that Cervantez's degenerative disc disease meets or equals Listing 1.04. It will be up to the Commissioner to conduct that physician review on remand.

10

In sum, substantial evidence does not support the Commissioner's conclusion that Cervantez's physical impairment did not meet or equal a listed impairment. Remand is appropriate to determine whether Cervantez's physical impairment meets or equals a listed impairment.

## II. Whether substantial evidence supports the ALJ's conclusion that Cervantez's mental impairment did not meet or equal a listed impairment

The ALJ concluded that Cervantez's mental impairment did not meet or equal Listing 12.04 for Affective Disorders. (DN 10-2 at 66.) The ALJ found that Cervantez had moderate difficulty interacting with others because the consultative examiner found only "moderate limitations in this domain." (*Id.*) The ALJ found that Cervantez was "at most mildly limited" in concentrating because Cervantez "offered no proof of difficulty with focus" and because the "consultative examiner felt he would not be affected in this domain." (*Id.*)

Cervantez argues that the record does not support the ALJ's finding that Cervantez's mental impairment only mildly limited his ability to perform the activities of daily living. (DN 13 at 619 – 20.) Cervantez also argues that the ALJ erred in concluding that Cervantez's IQ scores are not valid. (*Id.* at 623.)

The Commissioner responds that substantial evidence supports the ALJ's finding that Cervantez's mental impairment did not meet or equal the severity of a listed impairment. (DN 16 at 639 – 49.) The Commissioner argues that the record supports the Administrative Law Judge's determination that Cervantez did not satisfy the requirements of Listing 12.04[6] for Affective Disorders. (*Id.* at 641 – 42.)

---

[6] Listing 12.04 says:
Depressive, bipolar and related disorders (12.04).
    a. These disorders are characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a

11

Gregory Lynch, Ph. D., a licensed clinical psychologist, noted that Cervantez "has a medium ability to do housework." (DN 10-7 at 487.) Lynch also noted that Cervantez manages bills and shops weekly. (*Id.*) Lynch observed that "he has overall adequate social judgment." (*Id.* at 488.) As for Cervantez's ability to concentrate, Lynch found, "Thought content was appropriate to mood and circumstances. He evidenced no preoccupying thoughts." (*Id.* at 487.) Overall, Lynch's report provides substantial evidence that supports the ALJ's conclusion that Cervantez's mental impairment did not meet or equal the 12.04 listing for Affective Disorders.

### III. Whether substantial evidence supports the ALJ's conclusion that Cervantez's intellectual impairment met or equaled a listed impairment

The ALJ concluded that Cervantez's intellectual impairment did not meet or equal Listing 12.05 for Intellectual Disorders. (DN 10-2 at 67.)

The Commissioner argues that the record supports the Administrative Law Judge's determination that Cervantez did not satisfy the requirements of Listing 12.05[7] for Intellectual

---

clinically significant decline in functioning. Symptoms and signs may include, but are not limited to, feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal.
    b.    Examples of disorders that we evaluate in this category include bipolar disorders (I or II), cyclothymic disorder, major depressive disorder, persistent depressive disorder (dysthymia), and bipolar or depressive disorder due to another medical condition.
20 C.F.R. Pt. 404 Subpt. P App. 1 Part A2 § 12.04.

    [7] Listing 12.05 says:
Intellectual disorder (12.05).
    a.    This disorder is characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in your adaptive functioning.
    b.    The disorder that we evaluate in this category may be described in the evidence as intellectual disability, intellectual development disorder, or historically used terms such as "mental retardation."

12

Disorders. (DN 16 at 643 – 49.) The Commissioner concedes that the "ALJ's explanation admittedly exhibited some confusion regarding" how to assess whether a claimant's impairment meets or equals Listing 12.05. (*Id.* at 645.) The Commissioner argues that although the ALJ exhibited confusion about these standards, the ALJ's conclusion that Cervantez did not meet or equal Listing 12.05's requirements was legally sound and in the alternative, the error was harmless. (*Id.* at 645 – 48.)

The ALJ's discussion of Listing 12.05 for Intellectual Disorders does conflate Listings 12.04 and 12.05. (DN 10-2 at 66 – 67.) The ALJ refers to the "paragraph C criteria of listing 12.05" in concluding that Cervantez "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (*Id.* at 67.)

Listing 12.05 has only two paragraphs: paragraphs A and B. 20 C.F.R. 404 Subpt. P. App. 1 Part A2 § 12.00A(3). Those paragraphs require that the claimant "have significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and evidence that demonstrates or supports (is consistent with) the conclusion that your disorder began prior to age 22." *Id.* Listing 12.04 has three paragraphs. *See id.* § 12.00A(2)(c).

The ALJ appears to have concluded that Cervantez's IQ score of 68 was invalid because "the examiner did not administer the Rey test for malingering to test whether this score actually reflected the claimant's full effort." (*See* DN 10-2 at 67 ("In order to meet the criteria of 12.05 (b) or (c), the verbal, performance, or full scale IQ scores must be valid.")) The ALJ provided no analysis of why the Rey test for malingering was required to determine whether Cervantez's

---

c. This category does not include the mental disorders that we evaluate under neurocognitive disorders (12.02), autism spectrum disorder (12.10), or neurodevelopmental disorders (12.11).
20 C.F.R. Pt. 404 Subpt. P App. 1 Part A2 § 12.05.

score reflected full effort.  To the contrary, Cervantez testified that the score reflected best effort. (*See id.* at 99 (Q: "Did you give it your best effort? A: Yes."))

Nor does substantial evidence support the ALJ's finding that the "examiner did estimate the claimant was in the borderline range of intelligence."  (DN 10-2 at 67.)  The examiner's report does not explicitly diagnose Cervantez with having borderline intellectual functioning as the ALJ suggested.  (*See* DN 10-2 at 67 "By diagnosing the claimant with borderline intellectual functioning … ."))  Rather, Lynch noted, "The claimant's IQ is estimated as in the borderline to low average range."  (DN 10-7 at 487 – 88.)  Also, Lynch noted, "The claimant's Full Scale IQ of 68 falls within the extremely low range."  (*Id.*)

Moreover, given the Court's decision to remand for a finding of whether Cervantez's physical impairment met or equalled a listing, the Court cannot say the ALJ's failure to follow the regulations relating to Listing 12.05 was harmless.  Instead, the ALJ's failure to follow the regulations related to Listing 12.05 "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Gentry*, 741 F.3d at 729.

Altogether, substantial evidence does not support the Commissioner's conclusion that Cervantez's intellectual impairment did not meet or equal a listed impairment.  Remand is appropriate to determine whether Cervantez's intellectual impairment meets or equals a listed impairment.  Remand is also appropriate to determine whether Cervantez's combined impairments meet or equal a listed impairment.

## Order

The Court **REMANDS** this matter to the Commissioner.  On remand, the Commissioner shall determine whether Cervantez's physical impairment meets or equals a listed impairment.  If necessary, the Commissioner may refer Cervantez for a consultative physical examination.  The

Commissioner shall also determine whether Cervantez's intellectual impairment meets or equals a listed impairment. If necessary, the Commissioner may refer Cervantez for a consultative psychological examination.

cc: Counsel of record